No. 23-____

# In the United States Court of Appeals for the Fifth Circuit

———————————

IN RE VOLKSWAGEN AG, ET AL.,

*Petitioners.*

———————————

United States District Court for the
Eastern District of Texas, Marshall Division
(No. 22-cv-00506) (The Hon. Rodney Gilstrap)

———————————

## PETITION FOR WRIT OF MANDAMUS

———————————

JEFFREY B. WALL
SULLIVAN & CROMWELL LLP
1700 New York Avenue N.W.
Washington, D.C. 20006
Tel: (202) 956-7660

MICHAEL SMITH
SCHEEF & STONE, LLP
113 East Austin Street
Marshall, Texas 75670
Tel: (903) 938-8900

SHARON L. NELLES
STEVEN L. HOLLEY
SUHANA S. HAN
LEONID TRAPS
JESSICA H. GOLDMAN
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Tel: (212) 558-4000

*Counsel for Petitioners*

## CERTIFICATE OF INTERESTED PERSONS

No. 23-_____, *In re Volkswagen, et al.*

The undersigned counsel of record certifies that the following listed persons and entities have an interest in this case as described in the fourth sentence of Fifth Circuit Local Rule 28.2.1. These representations are made so the judges of this Court may evaluate possible disqualification or recusal.

**Petitioners**:

1. Petitioner Volkswagen AG is a publicly traded corporation organized under the laws of Germany. Porsche Automobil Holding SE (PSE) owns approximately 32% of the equity and 53% of the voting rights of Volkswagen AG. PSE is a holding company organized under the laws of Germany and the European Union. No other publicly traded company owns more than 10% of Volkswagen AG's stock.

2. Petitioner Volkswagen Group of America, Inc. is a privately held corporation organized under the laws of New Jersey whose principal place of business is in Virginia. Volkswagen Group of America, Inc. is a wholly owned subsidiary of Volkswagen AG.

**Attorneys for Petitioners**:

1. Sharon L. Nelles, Steven L. Holley, Suhana S. Han, Jeffrey B. Wall, Leonid Traps, and Jessica H. Goldman of Sullivan & Cromwell LLP.

2. Michael Smith of Scheef & Stone, LLP.

**Respondent**:

1.    Respondent Prevent U.S.A. Corporation (Prevent USA).

**Attorneys for Respondent**:

1.    Samuel F. Baxter, Jennifer Truelove, Radu A. Lelutiu, James H. Smith, Melissa Cabrera, and Kristin L. Leveille of McKool Smith P.C.

*/s/ Sharon L. Nelles*
Sharon L. Nelles

*One of the attorneys of record for Petitioners Volkswagen AG and Volkswagen Group of America, Inc.*

August 22, 2023

# TABLE OF CONTENTS

Page

INTRODUCTION...................................................................................... 1

RELIEF SOUGHT ................................................................................... 4

ISSUES PRESENTED ............................................................................. 5

BACKGROUND ....................................................................................... 5

    A.    Three Federal Courts Blocked Prevent Group From Moving This Dispute From Germany To Michigan........................ 5

    B.    The District Court Allowed Prevent Group To Move This Dispute From Germany To Texas. ..................................................10

ARGUMENT ............................................................................................12

I.    MANDAMUS IS WARRANTED BECAUSE THE DISTRICT COURT CLEARLY ERRED IN DECLINING TO APPLY THE *FORUM NON CONVENIENS* DOCTRINE. ...........................12

    A.    Petitioners Have No Other Way To Obtain Relief. .......................12

    B.    The Decision Below Is Clearly Incorrect.......................................14

        1.    This Court has held that the *forum non conveniens* doctrine applies in antitrust cases. ......................................15

        2.    Other courts of appeals have held that the *forum non conveniens* doctrine applies in antitrust cases....................21

        3.    The question of whether the *forum non conveniens* doctrine applies in antitrust cases is dispositive here. .......23

    C.    Mandamus Is Appropriate Under The Circumstances. ...............27

# TABLE OF CONTENTS
## (cont.)

Page

II.    MANDAMUS IS WARRANTED BECAUSE THE DISTRICT
COURT CLEARLY ERRED IN DECLINING TO CERTIFY
ITS ORDER FOR INTERLOCUTORY APPEAL. ..............................30

CONCLUSION....................................................................................32

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Air Crash Disaster Near New Orleans,*
    821 F.2d 1147 (5th Cir. 1987) (*en banc*),
    *reinstated after vacatur,* 883 F.2d 17 (5th Cir. 1989) ......................... *passim*

*Am. Rice, Inc.* v. *Arkansas Rice Growers Co-op. Ass'n,*
    701 F.2d 408 (5th Cir. 1983) .................................................................. 19

*Associated Gen. Contractors of California, Inc.* v. *California*
    *State Council of Carpenters,*
    459 U.S. 519 (1983) ................................................................................ 18

*In re Burlington N., Inc.,*
    822 F.2d 518 (5th Cir. 1987) .................................................................. 15

*Camejo* v. *Ocean Drilling & Exploration,*
    838 F.2d 1374 (5th Cir. 1988) ........................................................ 21, 23

*Cap. Currency Exch., N.V.* v. *Nat'l Westminster Bank PLC,*
    155 F.3d 603 (2d Cir. 1998) .............................................................. 16, 19

*Def. Distributed* v. *Bruck,*
    30 F.4th 414 (5th Cir. 2022) .................................................................. 15

*Douglass* v. *Nippon Yusen Kabushiki Kaisha,*
    46 F.4th 226 (5th Cir. 2022) .................................................................. 31

*DTEX, LLC* v. *BBVA Bancomer, S.A.,*
    508 F.3d 785 (5th Cir. 2007) ......................................................... 24, 26

*Empresa Lineas Maritimas Argentinas* v. *Schichau-*
    *Unterweser, A.G.,*
    955 F.2d 368 (5th Cir. 1992) .................................................................. 26

*Endure Indus.* v. *Vizient, Inc.,*
    2021 WL 3771770 (N.D. Tex. Apr. 9, 2021) ......................................... 14

v

# TABLE OF AUTHORITIES
## (cont.)

Page(s)

*In re Ford Motor Co.*,
  591 F.3d 406 (5th Cir. 2009)................................................................*passim*

*Howe* v. *Goldcorp Invs., Ltd.*,
  946 F.2d 944 (1st Cir. 1991) .......................................................16, 23

*In re Huffines Retail Partners, L.P.*,
  978 F.3d 128 (5th Cir. 2020)...........................................................30

*Indus. Inv. Dev. Corp.* v. *Mitsui & Co.*,
  704 F.2d 785 (5th Cir. 1983)............................................................18

*Indus. Inv. Dev. Corp.* v. *Mitsui & Co.*,
  671 F.2d 876 (5th Cir. 1982), *vacated*, 460 U.S. 1007 (1983) ...............*passim*

*In re Itron, Inc.*,
  883 F.3d 553 (5th Cir. 2018)............................................................24

*Kempe* v. *Ocean Drilling & Exploration Co.*,
  876 F.2d 1138, 1142 (5th Cir. 1989)........................................3, 22, 23

*In re Lloyd's Reg. N. Am., Inc.*,
  780 F.3d 283 (5th Cir. 2015)................................................................*passim*

*In re McClelland Eng'rs, Inc.*,
  742 F.2d 837 (5th Cir. 1984), *abrogated on other grounds*,
  *In re Air Crash*, 821 F.2d 1147 ....................................................33

*Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985)........................................................................30

*In re Paxton*,
  60 F.4th 252 (5th Cir. 2023) ...........................................................14

*Piper Aircraft Co.* v. *Reyno*,
  454 U.S. 235 (1981)...............................................................25, 26, 29

# TABLE OF AUTHORITIES
## (cont.)

Page(s)

*Prevent DEV GmbH* v. *Adient plc*,
   2021 WL 5585917 (E.D. Mich. Nov. 30, 2021) ...........................................1, 10

*Prevent USA Corp.* v. *Volkswagen AG*,
   17 F.4th 653 (6th Cir. 2021) ....................................................*passim*

*In re Radmax, Ltd.*,
   720 F.3d 285 (5th Cir. 2013) ...........................................................28

*RJR Nabisco Inc.* v. *Eur. Cmty.*,
   579 U.S. 325 (2016) ..........................................................................30

*In re Rolls Royce Corp.*,
   775 F.3d 671 (5th Cir. 2014) ...........................................................13

*Sinochem Int'l Co.* v. *Malaysia Int'l Shipping Corp.*,
   549 U.S. 422 (2007) ..........................................................................31

*Trotter* v. *7R Holdings LLC*,
   873 F.3d 435 (3d Cir. 2017) ............................................................18

*United States* v. *Nat'l City Lines, Inc.*,
   337 U.S. 78 (1949) ......................................................................18, 19

*United States* v. *National City Lines, Inc.*,
   334 U.S. 573 (1948) ..........................................................................17

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) (*en banc*)...........................13, 15, 24, 33

## Statutes

15 U.S.C. § 22 .........................................................................................17, 22

18 U.S.C. § 1965(a)......................................................................................24

28 U.S.C § 1292(b)............................................................................5, 12, 33, 34

# TABLE OF AUTHORITIES
## (cont.)

Page(s)

28 U.S.C. § 1404 ........................................................................................18

46 U.S.C. § 688 (1988)............................................................................24

## INTRODUCTION

This case belongs in Germany, where the litigation started. Prevent Group is a European automotive parts supplier, and it has unsuccessfully claimed in various German courts that Volkswagen AG, a German carmaker, attempted to put Prevent Group out of business or stop it from acquiring other parts suppliers. Given its losing streak in Germany, Prevent Group wanted a new venue, so it added as a plaintiff a shell U.S. subsidiary, Prevent USA, and brought the same kinds of claims twice in Michigan. Two federal district courts and a unanimous panel of the Sixth Circuit rejected that gambit and sent Prevent Group back to Germany under the *forum non conveniens* doctrine. *See Prevent USA Corp.* v. *Volkswagen AG*, 17 F.4th 653, 660 (6th Cir. 2021) (Sutton, C.J., and Batchelder, Larsen, JJ.) (*Prevent I*); *Prevent DEV GmbH* v. *Adient plc*, 2021 WL 5585917, at *7, *9, *15 (E.D. Mich. Nov. 30, 2021) (*Prevent II*). But rather than return to Germany, Prevent Group reincorporated Prevent USA in Sugar Land, Texas; tweaked the Michigan complaints; and filed this lawsuit in Marshall, Texas.

The response to Prevent Group's gamesmanship should have been simple: the *forum non conveniens* analysis has not changed since the Michigan litigation, and Germany remains the appropriate place to litigate a

dispute between two European entities over German conduct. Remarkably, however, the district court (Gilstrap, J.) held that the *forum non conveniens* doctrine does not apply in antitrust cases. The district court read this Court's decision in *Industrial Investment Development Corp.* v. *Mitsui & Co.*, 671 F.2d 876 (5th Cir. 1982), *vacated*, 460 U.S. 1007 (1983), to mean that one set of plaintiffs (federal antitrust plaintiffs) gets a free pass from an important set of civil-procedure rules (venue rules). There is no reason in law or logic why the *forum non conveniens* doctrine should not apply in antitrust cases just as it applies in all other substantive areas of the law.

To be sure, there is language in *Mitsui* saying as much, but this Court sitting en banc subsequently made clear that there are "no exceptions" to *forum non conveniens*, which "appl[ies] in *all* cases regardless of their jurisdictional bases or subject matter." *In re Air Crash Disaster Near New Orleans*, 821 F.2d 1147, 1163 (5th Cir. 1987) (*en banc*) (emphasis in original), *reinstated after vacatur*, 883 F.2d 17 (5th Cir. 1989). This Court has effectively limited *Mitsui* to its facts, because there the foreign forum (Indonesia) did not allow for comparable antitrust claims. *See Kempe* v. *Ocean Drilling & Exploration Co.*, 876 F.2d 1138, 1142 (5th Cir. 1989) (recognizing that the "crucial point" in *Mitsui* was to avoid "relegat[ing] a plaintiff to the courts of

a nation which does not recognize" basic antitrust principles). Taking full account of *Mitsui*, the three other courts of appeals to consider the question, including the Sixth Circuit in *Prevent I*, have agreed that the *forum non conveniens* doctrine applies in federal antitrust cases. Neither Prevent Group nor the district court has pointed to anything other than *Mitsui* to support an antitrust exception to the *forum non conveniens* doctrine.

Mandamus is an extraordinary remedy, but it is warranted when there is a clear right to relief and no other adequate means to obtain that relief. *In re Lloyd's Reg. N. Am., Inc.*, 780 F.3d 283, 288 (5th Cir. 2015). Those requirements are met here. In light of this Court's categorical language in *In re Air Crash*, the decision below is clearly incorrect. And there is no other way for the defendants to obtain relief. As this Court has explained, *forum non conveniens* cases are especially suited to mandamus relief because "a defendant's entitlement to [dismissal] ordinarily cannot adequately be vindicated through the regular appeals process." *Id.* at 289. Moreover, the district court declined to certify an interlocutory appeal, leaving the defendants no option other than mandamus to avoid litigating this case in Texas rather than in Germany, where it belongs. At a minimum, it was clearly wrong not to certify the interlocutory appeal. There is obviously ground for a

reasonable difference of opinion with the district court's decision, and applying *forum non conveniens* would dispose of this entire case.

This case cries out for this Court's review. When Prevent Group tried to bring virtually identical claims in Michigan, the district court said Prevent Group's "decision to sue in the United States has nothing to do with convenience and everything to do with forum shopping," and the Sixth Circuit affirmed that finding. *Prevent I*, 2021 WL 1087661, at *11 (E.D. Mich. Mar. 22, 2021); 17 F.4th at 660–661. Prevent Group has now come to Texas and gotten a different answer based on an incorrect reading of this Court's precedents. Only this Court can clear up that confusion. And only clearing it up now avoids "the very harm" of litigating in the wrong venue that is the whole reason for the *forum non conveniens* doctrine, *Lloyd's*, 780 F.3d at 288, and avoids rewarding Prevent Group's obvious gamesmanship. Prevent Group's behavior should have been a ticket to possible sanctions, not a ticket to take this case to judgment in Texas.

## RELIEF SOUGHT

Petitioners are Volkswagen AG and its wholly owned subsidiary Volkswagen Group of America, Inc. They respectfully request that this Court grant their petition for a writ of mandamus and direct the district court (i) to

4

dismiss this case in favor of a German forum under the *forum non conveniens*
doctrine or (ii) in the alternative to certify its order for interlocutory appeal
under 28 U.S.C § 1292(b).

## ISSUES PRESENTED

1.    Whether the district court clearly erred in declining to apply the
*forum non conveniens* doctrine.

2.    Whether the district court clearly erred in declining to certify its
order for interlocutory appeal.

## BACKGROUND

**A.    Three Federal Courts Blocked Prevent Group From Moving
This Dispute From Germany To Michigan.**

1.    ***German litigation***.    Prevent Group and Volkswagen AG have
been engaged in litigation in Germany since 2016.  The German litigations
began when Prevent Group acquired Car Trim, a German parts supplier, and
demanded millions of euros in additional payments from Volkswagen AG for
automotive parts Car Trim had already contracted to deliver.    When
Volkswagen AG refused, Car Trim and another Prevent Group affiliate
declared an "immediate delivery freeze" for all Volkswagen companies.
App. 110a–111a.  In August 2016, a German court ordered Prevent Group to
resume supplying Volkswagen, because the "production standstill" was

"unjustified" and "threaten[ed] to result in" significant "financial losses" to Volkswagen. App. 111a. Despite that order, Prevent Group continued the supply stop until Volkswagen AG paid. *Id.* In March 2018, Volkswagen AG informed Prevent Group that it was terminating their business relationships. *Id.*

In the years since, there has been "a long series of lawsuits in which Prevent Group companies have claimed in various German courts—without success—that [Volkswagen AG] and its subsidiaries are attempting to put them out of business and/or stop them from acquiring other parts suppliers." *Prevent I*, 2021 WL 1087661, at *12. For example, in February 2019, the Regional Court of Dortmund rejected Prevent Group's antitrust claims— claims central to this case as well—that Volkswagen AG "side-line[d] all supply companies of the Prevent Group. App. 111a. The court held that Volkswagen AG's aim was not "to exploit" any "market power" in the purchase of automotive parts, but rather "to secure [its] operational processes." *Id.* On similar grounds, multiple German trial and appellate courts have repeatedly rejected Prevent Group's antitrust and business tort claims. *See Prevent I*, 17 F.4th at 656.

6

Prevent Group's litigation in Germany remains ongoing, including a case that asserts precisely the same theory as this case—namely, that through a "destruction campaign" referred to as "Project 1," Volkswagen AG maintained a "monopsony" by "blocking" Prevent Group from acquiring other parts suppliers in "South America, North America, [and] Europe." App. 112a. As Prevent Group itself has acknowledged by repeatedly availing itself of German courts, Germany provides an available and adequate forum for Prevent Group to make the same claims that are at issue in this case.

2.    ***Prevent I***.  In November 2019, Prevent Group brought its first U.S. litigation in the Eastern District of Michigan.  Prevent USA, which is the same plaintiff as here, asserted antitrust and business tort claims against Volkswagen AG and Volkswagen Group of America, which are the same defendants as here.  Specifically, Prevent USA claimed, again focusing on "Project 1," that those Volkswagen companies had wrongly blocked Prevent Group from acquiring other parts suppliers—which are the same allegations as here.

The district court dismissed the case on the basis of *forum non conveniens*, concluding that all three factors supported dismissal in favor of Germany, "the obviously more convenient and appropriate forum."  *Prevent I*,

2021 WL 1087661, at *11.  First, the court held that "Germany is an available and adequate forum," as "plaintiffs themselves recognize[d]" by filing several related lawsuits "in German courts." *Id.* at *9.  Second, the court found that the public and private interest factors "weigh strongly in favor" of litigating in Germany because the action "concerns a German company's alleged plan (devised in Germany by [Volkswagen AG] and participated in nominally by [Volkswagen Group of America])"; any connection to the U.S. is "speculative" at best; and the "vast majority of the evidence" is in Germany. *Id.* at *9–11. Third, the court explained that Prevent Group's choice of forum should be given "little, if any, deference" because "Prevent USA appears to be nothing more than a scouting party for the Prevent Group, a cluster of European companies with no operations in" or "genuine connection to the United States." *Id.* at *11.  The court concluded that Prevent USA's "decision to sue in the United States has nothing to do with convenience and everything to do with forum shopping." *Id.*

Prevent Group appealed, and the Sixth Circuit affirmed in a unanimous opinion authored by Chief Judge Sutton.  The court of appeals held that Prevent Group had failed to "show[] a meaningful connection between the alleged injury and the United States," and rejected its attempt "to open

8

another front on a dispute that should remain in Europe." *Prevent I*, 17 F.4th at 656, 660.  The court agreed that Prevent USA is a "shell company," and concluded that "the real party in interest is the Prevent Group," "a foreign plaintiff."  *Id.* at 661.  As especially relevant here, the court also rebuffed Prevent Group's argument for a categorical bar on *forum non conveniens* dismissals of U.S. antitrust claims.  The court rejected Prevent Group's misreading of *Mitsui*, and concluded that nothing in the Clayton Act "indicates that the district court may not dismiss a case for refiling in a foreign country." *Id.* at 662.

3.  ***Prevent II***.  While *Prevent I* was pending, Prevent Group brought a second action in the Eastern District of Michigan, this time through a German affiliate, Prevent DEV GmbH, and named Volkswagen AG and two U.S.-based parts suppliers (Adient plc and Lear Corp.) as defendants.  That case also involved antitrust and business tort claims based on "Project 1," and included allegations that Volkswagen AG agreed with other parts suppliers to boycott Prevent Group.  The case was assigned to a different district judge, and that judge also dismissed Prevent Group's claims based on *forum non conveniens* in favor of a German forum.  That court too held that "[t]he suit's place of origin is Germany," and that Prevent Group was engaged in "forum

9

shopping." *Prevent II*, 2021 WL 5585917, at \*7, \*9, \*15.  Prevent Group did not appeal.

## B.     The District Court Allowed Prevent Group To Move This Dispute From Germany To Texas.

Following the dismissals in *Prevent I* and *II*, Prevent Group did not refile in Germany.  Instead, it reincorporated Prevent USA in Sugar Land, Texas in April 2022 and then brought a cut-and-paste mashup of the *Prevent I* and *II* complaints in Marshall, Texas.  The only change is Prevent Group added one more alleged failed acquisition of a European parts supplier to its list, asserting that, after the *Prevent I* and *II* decisions, it attempted to acquire a parts supplier based in Luxembourg that has an operation in Texas.  App. 73a–74a.  Based solely on information and belief, Prevent Group alleges that that attempted acquisition was blocked by the Volkswagen defendants.  App. 74a.  Otherwise, the complaint is identical in all material respects to the complaints in *Prevent I* and *II*.

As in those cases, the Volkswagen defendants moved to dismiss on *forum non conveniens* grounds.  The magistrate judge recommended denying the motion, because he read this Court's decision in *Mitsui* to establish a "per se rule that antitrust cases cannot be dismissed based on *forum non conveniens*."  App. 9a (citing *Mitsui*, 671 F.2d at 890–891).  The magistrate

10

judge dismissed the en banc Court's subsequent statement in *In re Air Crash* that *forum non conveniens* principles "apply in *all* cases regardless of their jurisdictional bases or subject matter," 821 F.2d at 1163 (emphasis in original), as "mere *dicta*." App. 8a.  Because the magistrate judge concluded that the *forum non conveniens* doctrine was unavailable, he did not analyze any of the three factors relevant to dismissal under that doctrine.  The Volkswagen defendants also argued that *Prevent I* and *II* were issue-preclusive because the minor changes to the Michigan complaints were immaterial, but the magistrate judge rejected that argument as well.  App. 9a.

The Volkswagen defendants objected to the report and recommendation and requested that the district court grant their motion to dismiss, or in the alternative certify the order for interlocutory appeal under 28 U.S.C. § 1292(b).  App. 220a.  The district court adopted the report and recommendation without addressing any of the defendants' objections. App. 1a.  The court also declined to certify an interlocutory appeal.  The court observed that "[e]ven when the statutory criteria are met, district courts may nevertheless deny certification," but it did not explain why it was declining to certify an appeal here.  App. 2a.  This mandamus petition follows.

## ARGUMENT

Mandamus relief is appropriate where (i) the petitioner has "no other adequate means to attain the relief [it] desires"; (ii) there is "a clear and indisputable right to the writ"; and (iii) the writ is "appropriate under the circumstances." *Lloyd's*, 780 F.3d at 288 (internal quotation marks omitted). "These hurdles, however demanding, are not insuperable," and this Court will grant mandamus where "there has been a 'usurpation of judicial power' or a 'clear abuse of discretion.'" *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (*en banc*) (citation omitted). Here, all three conditions are met, and mandamus presents the Court with its only meaningful opportunity to correct the district court's misreading of *Mitsui*, which otherwise will evade appellate review. At a minimum, this case plainly meets the criteria for an interlocutory appeal.

## I.    MANDAMUS IS WARRANTED BECAUSE THE DISTRICT COURT CLEARLY ERRED IN DECLINING TO APPLY THE *FORUM NON CONVENIENS* DOCTRINE.

### A.    Petitioners Have No Other Way To Obtain Relief.

This Court has explained that cases involving the *forum non conveniens* doctrine inherently belong "in the 'no other means to attain relief' category." *In re Ford Motor Co.*, 591 F.3d 406, 416 (5th Cir. 2009) (citation omitted). That is because "a defendant's entitlement to [a *forum non conveniens* dismissal]

12

ordinarily cannot adequately be vindicated through the regular appeals process." *Lloyd's*, 780 F.3d at 288. "[T]he very harm sought to be avoided" by dismissal—"inconvenience to witnesses, parties, and other[s]"—"will have worked irreversible damage and prejudice by the time of the final judgment." *Id.* (internal quotation marks omitted); *see In re Rolls Royce Corp.*, 775 F.3d 671, 676 (5th Cir. 2014).

That prejudice is particularly acute in a complex antitrust case like this one, because discovery tends to be "broad, time-consuming and expensive." *Endure Indus.* v. *Vizient, Inc.*, 2021 WL 3771770, at *1 (N.D. Tex. Apr. 9, 2021). Here, the burden of extensive foreign-language document discovery and depositions, the difficulty of deposing Prevent Group's foreign officers and employees, the additional difficulty of obtaining the attendance of both parties' foreign witnesses at trial, and the expense of expert discovery "cannot be undone or corrected by . . . a reviewing court once [they] occur[]." *In re Paxton*, 60 F.4th 252, 260 (5th Cir. 2023) (granting mandamus where harm caused by district court's errors "[could] not be rectified as the case progresse[d]"). Direct appeal "will provide no remedy" for forcing Volkswagen AG to defend itself in Texas instead of in Germany. *Ford*, 591 F.3d at 416.

Direct appeal is inadequate for another reason as well. Usually postponing a party's arguments until a direct appeal from a final judgment does not change the nature of the arguments themselves. But in the *forum non conveniens* context, the whole point is that a case should be litigated elsewhere for reasons of convenience and fairness. Once the case has been litigated in the plaintiff's chosen forum, the balance of the *forum non conveniens* factors is not the same as it was before. Here, absent mandamus, this Court will never be able to consider whether the *forum non conveniens* factors—as they stand now—require dismissal. This Court has accordingly recognized that only mandamus is the appropriate vehicle for reviewing the wrongful denial of a motion to dismiss on *forum non conveniens* grounds. *See Ford*, 591 F.3d at 416; *Lloyd's*, 780 F.3d at 288–289.

## B.    The Decision Below Is Clearly Incorrect.

In declining to dismiss on the basis of *forum non conveniens*, "a court's exercise of its discretion is not unbounded." *Volkswagen*, 545 F.3d at 310. The district court "by definition abuses its discretion when it makes an error of law," particularly where the holding "was not a mere discretionary one but rather turns on legal questions appropriate for appellate review." *Def. Distributed* v. *Bruck*, 30 F.4th 414, 427 (5th Cir. 2022); *In re Burlington N.*,

14

*Inc.*, 822 F.2d 518, 523 (5th Cir. 1987).  "If the district court clearly abused its discretion" in denying a motion to dismiss on the basis of *forum non conveniens*, the "right to issuance of the writ is necessarily clear and indisputable" and "petitioners are entitled to a writ of mandamus."  *Ford*, 591 F.3d at 416.

In this case, the district court erred as a matter of law by holding that the *forum non conveniens* doctrine does not apply in antitrust cases.  This Court sitting en banc held otherwise in *In re Air Crash*, as have the other three federal courts of appeals to consider the question.  *Prevent I*, 17 F.4th at 662–663; *Cap. Currency Exch., N.V.* v. *Nat'l Westminster Bank PLC*, 155 F.3d 603, 606 (2d Cir. 1998); *Howe* v. *Goldcorp Invs., Ltd.*, 946 F.2d 944, 949 (1st Cir. 1991) (Breyer, J.).  The district court's decision meant that it did not even consider the *forum non conveniens* factors, even though two federal district courts and the Sixth Circuit already found that all of those factors "weigh strongly in favor of litigating this matter in Germany."  *Prevent I*, 2021 WL 1087661, at *17.

### 1.     This Court has held that the *forum non conveniens* doctrine applies in antitrust cases.

In adopting the magistrate judge's report and recommendation, the district court embraced the notion that this Court's 1982 decision in *Mitsui*

carves out an antitrust exception to the *forum non conveniens* doctrine. App. 1a–2a. Even assuming that it briefly did, that has not been the law in this Circuit for decades. The report and recommendation does not address that five years after *Mitsui*, this Court sitting en banc in *In re Air Crash* rejected any subject-matter exceptions to the *forum non conveniens* doctrine; that in other decisions this Court has limited *Mitsui* to its facts; and that no court inside this Circuit has adopted an antitrust exception to *forum non conveniens* in the 41 years since *Mitsui*.

To begin with *Mitsui*, this Court reversed a *forum non conveniens* dismissal of an antitrust case in favor of an Indonesian forum. The Court emphasized that, because Indonesian courts would not apply any body of law similar to federal antitrust law, dismissing the case "would be the functional equivalent of a decision that defendants' acts are beyond the reach of the Sherman Act." 671 F.2d at 891. The Court cited the Supreme Court's decision in *United States* v. *National City Lines, Inc.*, 334 U.S. 573 (1948) (*National City Lines I*), which had interpreted the Clayton Act's special venue provision to mean that a case could not be transferred when brought "in any district wherein [the defendant] may be found or transacts business." 15 U.S.C. § 22. As *Mitsui* recognized, *National City Lines I* held that the "common law

doctrine of *forum non conveniens*" is "inapplicable to suits brought under the United States antitrust laws." 671 F.2d at 890.[1]

The problem was that *National City Lines I* was not good law almost from the moment it was decided. Immediately after the decision, Congress abrogated it by enacting 28 U.S.C. § 1404, which provides that "a district court may transfer *any* civil action to any other district" (emphasis added). Section 1404's categorical language means that an antitrust case (like any other civil action) may be transferred for the convenience of parties and witnesses, notwithstanding the Clayton Act's special venue provision. The very next year, the Supreme Court held that Section 1404 "extends the doctrine of forum non conveniens to antitrust suits." *United States* v. *Nat'l City Lines, Inc.*, 337 U.S. 78, 79 (1949) (*National City Lines II*); *see, e.g., Trotter* v. *7R Holdings*

---

[1]    In this Court's initial decision in *Mitsui*, it reversed a grant of summary judgment to the defendants, holding that the plaintiffs had standing and that the *forum non conveniens* doctrine does not apply in antitrust cases. The Supreme Court vacated and remanded for reconsideration in light of its decision on standing in *Associated General Contractors of California, Inc.* v. *California State Council of Carpenters*, 459 U.S. 519 (1983). On remand, this Court discussed only the standing issue in "reaffirming [its] former judgment." *Indus. Inv. Dev. Corp.* v. *Mitsui & Co.*, 704 F.2d 785, 786 (5th Cir. 1983).

*LLC*, 873 F.3d 435, 440 (3d Cir. 2017) ("Congress subsequently superseded [*National City Lines I*] by enacting [Section] 1404(a).").

In a footnote, the Court in *Mitsui* said that *National City Lines II* did not disturb the Supreme Court's earlier reading of the Clayton Act's special venue provision. *See* 671 F.2d at 890 n.18. That is flatly incorrect. After Section 1404's enactment, National City Lines renewed its *forum non conveniens* motion, which the district court granted. 337 U.S. at 80. The Supreme Court *upheld* that decision. 337 U.S. at 80. It framed the issue as whether the *forum non conveniens* doctrine applies in antitrust suits, *see id.* at 79; held that it does, *see id.* at 84; and explained that it was simultaneously holding in companion cases that *forum non conveniens* applies to other types of federal claims as well, *see id.* at 80–81 (citing cases). The Supreme Court "did not explicitly limit its holding" to domestic-transfer cases governed by Section 1404(a), and "did not distinguish [Section] 1404(a) from the common law doctrine of *forum non conveniens*." *Cap. Currency Exch., N.V.*, 155 F.3d at 607.

*Mitsui*'s discussion of *forum non conveniens* was not only wrong but short-lived. The year after *Mitsui*, this Court affirmed the dismissal of an antitrust case based on a typical application of the *forum non conveniens*

factors without mentioning *Mitsui*.  *See Am. Rice, Inc.* v. *Arkansas Rice Growers Co-op. Ass'n*, 701 F.2d 408, 417 (5th Cir. 1983).  Then in *In re Air Crash*, the en banc Court addressed whether federal *forum non conveniens* principles should apply in diversity cases.  It held that those principles should "apply in *all* cases regardless of their jurisdictional bases or *subject matter*." 821 F.2d at 1163 (second emphasis added).  This Court explained at length how parties should raise, and district courts should consider, *forum non conveniens* in any case.  *See id.* at 1164–1166.[2]

The district court incorrectly brushed aside *In re Air Crash*'s statement that *forum non conveniens* principles "apply in *all* cases regardless of their . . . subject matter" as "mere *dicta*."  App. 8a.  The question in *In re Air Crash* was whether to carve out an exception for diversity cases and apply state *forum non conveniens* principles.  The Court reasoned that the Supreme Court had "recognized no exceptions to its general pronouncements on the doctrine," and the Court similarly declined to carve out an exception for diversity cases:  "We therefore are of the opinion that [federal *forum non*

---

[2]    *In re Air Crash* was subsequently vacated on other grounds by the Supreme Court, but this Court formally "reinstate[d] the [prior] opinion of the en banc court," including with respect to the *forum non conveniens* doctrine. 883 F.2d 17, 17 (5th Cir. 1989).

*conveniens* principles] apply in all cases regardless of their jurisdictional bases or subject matter."  821 F.2d at 1163.  Far from being dictum, that statement was central to this Court's reasoning and its decision to apply the federal *forum non conveniens* doctrine.  *See id.* at 1168.

As if to remove all doubt, the Court recognized in a footnote that it had applied a "modified" *forum non conveniens* analysis in Jones Act and maritime actions.  821 F.2d at 1163 n.25.  The en banc Court held that "[h]enceforth, all cases, including Jones Act and maritime actions," would be governed by the same *forum non conveniens* principles.  *Id.*  In so doing, the Court overruled a line of its own precedents, which sparked disagreement from four of the fifteen judges on the en banc panel.  *Id.*  *In re Air Crash*'s categorical rule thus mattered not only to the decision itself, but to other bodies of law.  *See Camejo* v. *Ocean Drilling & Exploration*, 838 F.2d 1374, 1379 (5th Cir. 1988) (noting that *In re Air Crash* was "new law" and applying the traditional *forum non conveniens* framework in a Jones Act case).

In the 41 years since *Mitsui*, no court in this Circuit has held that the *forum non conveniens* doctrine does not apply in antitrust cases.  To the contrary, this Court has essentially limited *Mitsui* to its facts:  antitrust cases (like other cases) may not be dismissed in favor of a foreign forum if that forum

lacks laws comparable to those in the United States, thus depriving the plaintiff of any effective remedy. In *Kempe* v. *Ocean Drilling & Exploration Co.*, this Court said that the "crucial point" in *Mitsui* was to avoid "relegat[ing] a plaintiff to the courts of a nation which does not recognize" basic antitrust principles. 876 F.2d at 1142–1143. That brings *Mitsui* in line with the *forum non conveniens* doctrine, which requires an available and adequate foreign forum.

### 2.   Other courts of appeals have held that the *forum non conveniens* doctrine applies in antitrust cases.

The First, Second, and Sixth Circuits have likewise rejected an antitrust exception to the *forum non conveniens* doctrine. As those courts have explained, "[t]he Clayton Act says nothing about forum non conveniens dismissal." *Prevent I*, 17 F.4th at 661 (Sutton, C.J.). The Clayton Act's special venue provision authorizes a plaintiff to sue "in any district wherein [the defendant] may be found or transacts business," 15 U.S.C. § 22, but "nothing in that language indicates that the district court may not dismiss a case for refiling in a foreign country," *Prevent I*, 17 F.4th at 662. As then-Chief Judge Breyer explained in addressing similar special venue provisions in the federal securities laws, "[t]he language of such a statute does not forbid transfer" but

"simply adds to the number of courts empowered to hear a plaintiff's claim." *Howe*, 946 F.2d at 949.

Other circuits also have recognized that exempting antitrust claims from the *forum non conveniens* doctrine would "creat[e] a 'hodge-podge' of different conclusions about a court's power to dismiss a case for statutes with similar special venue provisions." *Prevent I*, 17 F.4th at 662–663. As the Sixth Circuit noted in *Prevent I*, this Court has applied the *forum non conveniens* doctrine in cases involving other statutes with special venue provisions similar to the Clayton Act's, including RICO, *see Kempe*, 876 F.2d at 1144, and the Jones Act, *see Camejo*, 838 F.2d at 1379. The decision below thus carves out an exception for a single special venue provision, when *forum non conveniens* indisputably applies to similarly worded provisions. That result defies language and logic.

The magistrate judge distinguished cases like *Kempe* as "based on the type of federal statute giving rise to the claims in suit." App. 8a. That is a distinction without a difference. RICO allows plaintiffs to sue in "any district in which" defendant "resides, is found, has an agent, or transacts his affairs," 18 U.S.C. § 1965(a), and the Jones Act formerly allowed suit in "the district in which the defendant employer resides or in which his principal office is

located," 46 U.S.C. § 688 (1988). There is no reason to treat those special venue provisions differently. *Prevent I*, 17 F.4th at 663 (explaining that courts should not "give the Clayton Act's special venue provision different legal effect than similarly worded provisions of other statutes"). The decision below undermines the "consistency of outcomes" in *forum non conveniens* cases, which favors mandamus review. *In re Itron, Inc.*, 883 F.3d 553, 568 (5th Cir. 2018); *Volkswagen*, 545 F.3d at 319.

### 3. The question of whether the *forum non conveniens* doctrine applies in antitrust cases is dispositive here.

The legal question of whether the *forum non conveniens* doctrine is available makes all the difference here. The *forum non conveniens* analysis considers three factors: (1) whether Germany is an available and adequate alternative forum; (2) whether public and private factors weigh in favor of litigating in Germany as opposed to the United States; and (3) whether there are reasons to deny Prevent Group its choice of forum. *See, e.g.*, *DTEX, LLC* v. *BBVA Bancomer, S.A.*, 508 F.3d 785, 793 (5th Cir. 2007); *see also Piper Aircraft Co.* v. *Reyno*, 454 U.S. 235, 257–258 (1981). As two federal district courts in Michigan and the Sixth Circuit have already held, all three of those factors "weigh strongly in favor of litigating this matter in Germany." *Prevent*

*I*, 2021 WL 1087661, at *17. The district court's legal error is thus dispositive to whether this case is litigated in Germany or the United States.

First, there is no dispute that Germany is both an available and adequate alternative forum, and Prevent USA has never contended otherwise. As the district court in *Prevent I* recognized, "the fact that Prevent Group companies have filed several lawsuits against VWAG and its subsidiaries in German courts for unfair competition and antitrust violations arising from their alleged execution of Project 1 is powerful evidence that plaintiffs themselves recognize Germany as an available and adequate forum for the litigation of such disputes." 2021 WL 1087661, at *9. On appeal, the Sixth Circuit added the fact that German antitrust law is "increasingly sophisticated" and "broadly similar" to U.S. antitrust law. 17 F.4th at 659, 663.

Second, all of the public and private factors favor dismissal. Germany is the place of alleged injury because the real party in interest is, as pled, "the Prevent Group." App. 34a. Germany is also the "locus of the alleged culpable conduct" because that is "where Project 1 allegedly was devised." *Prevent I*, 2021 WL 1087661, at *9–10. Prevent Group has not denied that all party witnesses, including the sole Prevent USA director (Kenan Hastor), reside in Germany and speak German; or that Volkswagen AG's and Prevent Group's

documents are located in Germany and written in German. That "many of the matters of law in this case have already been decided" by German courts also "weighs heavily in favor" of litigating there. *DTEX*, 508 F.3d at 803.[3]

Prevent Group argued below that Germany is not an appropriate forum because the company was allegedly blocked from acquiring several U.S.-based suppliers. That is the same argument Prevent Group made in Michigan, but all three courts rejected the notion that Michigan was somehow a better forum than Germany. *See Prevent I*, 2021 WL 1087661, at *10 (finding Prevent Group's claim that the "defendants, through Project 1, prevented them from acquiring other Michigan-based suppliers" was "too speculative to merit any substantial weight"); *Prevent II*, 2021 WL 5585917, at *4 (finding on allegations identical to those made here that "it is not at all clear Prevent has alleged *domestic* harm sufficient to bring a Sherman Act claim") (emphasis

---

[3] Prevent Group argued below that "evidence" is required for *forum non conveniens* dismissal. App. 156a, 203a. The Supreme Court and the Fifth Circuit have both rejected that contention. *Piper Aircraft Co.*, 454 U.S. at 258; *Empresa Lineas Maritimas Argentinas* v. *Schichau-Unterweser, A.G.*, 955 F.2d 368, 371–372 (5th Cir. 1992) (declining to impose "blanket rule requiring affidavit evidence"). Moreover, three U.S. courts have *already* weighed the *forum non conveniens* factors and held that Germany is the more appropriate forum. That Prevent Group has dragged Volkswagen AG and the federal courts into a game of whack-a-mole does not entitle it to a different outcome here.

added).   The only new factual allegation not included in the Michigan complaints is that Prevent Group was blocked from acquiring IAC, a Luxembourg-based parts supplier with a Texas operation.   That allegation, made entirely on "information and belief," App. 74a, is precisely the same type of "speculative" allegation that the district court and Sixth Circuit rejected in *Prevent I*.  *See* 2021 WL 1087661, at *9; 17 F.4th at 660.

Third, Prevent Group's choice of forum is entitled to no deference.   In fact, Prevent Group's litigation conduct is outrageous.   Two federal district courts in Michigan held that Prevent Group was forum-shopping.   *Prevent I*, 2021 WL 1087661, at *11; *Prevent II*, 2021 WL 5585917, at *9.   The Sixth Circuit agreed that Prevent USA is a "shell company," Prevent Group is "the real party in interest," and Prevent Group should not be permitted "to open another front on a dispute that should remain in Europe."   17 F.4th at 660–661.   In response to those decisions, rather than refile in Germany, Prevent Group reincorporated Prevent USA in Sugar Land, Texas and brought suit in Marshall, Texas.   It is hard to imagine more blatant forum-shopping.   Allowing this suit to proceed would amount to "extraordinary error[]," given Prevent Group's naked gamesmanship and the fact that "not a single relevant factor

favors [Prevent Group's] chosen venue." *In re Radmax, Ltd.*, 720 F.3d 285, 290 (5th Cir. 2013).[4]

### C. Mandamus Is Appropriate Under The Circumstances.

The final factor in determining whether mandamus review is appropriate requires a flexible consideration of the circumstances. Here, the decision below will have a number of serious and harmful consequences.

1. By adopting a categorical bar on *forum non conveniens* in antitrust cases, the district court's decision encourages forum shopping by foreign antitrust plaintiffs unhappy with their home courts or seeking treble damages, attorneys' fees, and the broad discovery generally available in U.S. litigation. Courts in this circuit "would become even more attractive" to

---

[4] Since the district court's decision, Prevent Group has filed a Second Amended Complaint alleging unspecific "meetings" "in the U.S. and Texas" and asserting that it "is in the process of developing an assembly and service facility in Marshall to retrofit Ford trucks and other vehicles with campers." (Second Amended Complaint ¶ 42.) Curiously, Prevent Group also deleted some of its allegations regarding its purported discussions with IAC. (*Id.* ¶ 151.) In any event, these "new" allegations do not affect the availability of mandamus relief. The question here is whether the district court erred by not conducting the *forum non conveniens* analysis on Prevent Group's then-operative First Amended Complaint. Had the district court conducted that analysis and granted the Volkswagen defendants the dismissal to which they were entitled, Prevent Group would have had no opportunity to amend its complaint—again—to include such vague allegations, which are insufficient to overcome the factors that remain heavily in favor of litigating this dispute in a German forum.

"foreign plaintiffs," and "[t]he flow of litigation into the United States would increase and further congest already crowded courts." *Piper Aircraft Co.*, 454 U.S. at 252. Because the district court's decision promotes "forum shopping by those seeking to gain inappropriate leverage over opponents," mandamus is the "proper vehicle" to remedy the court's error. *In re Huffines Retail Partners, L.P.*, 978 F.3d 128, 134 (5th Cir. 2020).

2.     A categorical bar on *forum non conveniens* in antitrust cases also would undermine principles of international comity. The "application of American private treble-damages remedies to anticompetitive conduct taking place abroad has generated considerable controversy in other nations, even when those nations agree with U.S. substantive [antitrust] law." *RJR Nabisco Inc.* v. *Eur. Cmty.*, 579 U.S. 325, 347 (2016). Those comity considerations are why parties can compel arbitration of U.S. antitrust claims even in foreign arbitral tribunals: "international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes" outweighs the "fundamental importance to American democratic capitalism of the regime of the antitrust laws." *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 629, 634 (1985).

Of course, U.S. antitrust laws sometimes reach the conduct of foreign actors whose conduct has a material effect on competition in this country, but doctrines such as *forum non conveniens* exist to limit overreach by plaintiffs seeking a U.S. forum. Mandamus is appropriate where international comity concerns are not respected, and such concerns are particularly substantial where, as here, the parties have already litigated—indeed, continue to litigate—identical claims abroad. *See Sinochem Int'l Co.* v. *Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 424 (2007) (lawsuit was "a textbook case for immediate *forum non conveniens* dismissal," "[g]iven the proceedings ongoing in China, and the absence of cause to second-guess the authority of Chinese law or the competence of [Chinese] courts") (internal quotation marks omitted); *Douglass* v. *Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226, 237 n.17 (5th Cir. 2022) (*forum non conveniens* grounded in "international comity concerns" because "concurrent litigation [was] pending in [foreign] Courts").

3.     Finally, mandamus is appropriate to stop Prevent Group from gaming the U.S. judicial system. In *Ford*, this Court issued mandamus relief in part because of the "striking" inconsistency between the district court's refusal to dismiss on *forum non conveniens* grounds and another district court's previous dismissal of an "almost-identical case" on those grounds.

591 F.3d at 416 n.19. The Court warned of "a perverse result" that would occur if "[m]erely moving this case" from one district court to another would "allow plaintiffs to circumvent our earlier binding precedent" as to the appropriate alternative forum. *Id.* That warning applies in spades here. The Michigan dismissals required Prevent Group to "litigate in good faith" in Germany, not to "re-file this suit" without a "sufficient showing that the [German] courts are unavailable for this litigation despite petitioners' submission to jurisdiction there." *Ford*, 591 F.3d at 417. Prevent Group never even attempted to refile its claims in a German court. It simply ran to Texas and argued for a different result under *Mitsui*.

## II.  MANDAMUS IS WARRANTED BECAUSE THE DISTRICT COURT CLEARLY ERRED IN DECLINING TO CERTIFY ITS ORDER FOR INTERLOCUTORY APPEAL.

At the very least, mandamus relief is warranted to correct the district court's refusal to certify its order for interlocutory appellate review under 28 U.S.C. § 1292(b). Under Section 1292(b), a district court "shall" certify an order for interlocutory review when it is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." Here, neither

of those requirements can be seriously disputed.  There is plainly substantial ground for difference of opinion with the district court's decision—the Sixth Circuit held in litigation involving these same parties that the *forum non conveniens* doctrine *does* apply to antitrust cases generally, and to this antitrust case specifically.  And as explained earlier, applying the doctrine makes all the difference to whether this case is litigated in Texas or Germany.

The district court observed that "the decision to certify an interlocutory appeal lies within the sound discretion of the district court," and "[e]ven when the statutory criteria are met, district courts may nevertheless deny certification."  App. 2a.  But as with the application of *forum non conveniens*, "discretion has limitations" and can be "clear[ly] abuse[d]."  *Volkswagen*, 545 F.3d at 311.  The district court did not dispute that the statutory criteria are satisfied, and it offered no reason—none whatsoever—for declining to certify an appeal.  Whatever discretion Section 1292(b) grants, it requires reasoned exercise of that discretion.  *See In re McClelland Eng'rs, Inc.*, 742 F.2d 837, 837–839 (5th Cir. 1984) (vacating district court's order and instructing it to certify interlocutory appeal where there was a "substantial likelihood" that the court had misapplied the *forum non conveniens* factors or

abused its discretion), *abrogated on other grounds*, *In re Air Crash*, 821 F.2d 1147.

## CONCLUSION

Petitioners request a writ of mandamus directing the district court to dismiss this case in favor of German courts, or in the alternative directing the district court to certify its order pursuant to 28 U.S.C. § 1292(b).


August 22, 2023

JEFFREY B. WALL
SULLIVAN & CROMWELL LLP
1700 New York Avenue N.W.
Washington, D.C. 20006
Tel:  (202) 956-7660

MICHAEL SMITH
SCHEEF & STONE, LLP
113 East Austin Street
Marshall, Texas 75670
Tel: (903) 938-8900

Respectfully submitted,

*/s/ Sharon L. Nelles*
SHARON L. NELLES
STEVEN L. HOLLEY
SUHANA S. HAN
LEONID TRAPS
JESSICA H. GOLDMAN
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Tel: (212) 558-4000


*Counsel for Petitioners*

## CERTIFICATE OF SERVICE

I hereby certify that this Petition for Writ of Mandamus was electronically filed with the appellate court on August 22, 2023 using the ECF system, which will send notification of such filing to all parties of record.

Respectfully submitted,

*/s/ Sharon L. Nelles*

August 22, 2023

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing Petition for Writ of Mandamus complies with the requirements set out in Federal Rules of Appellate Procedure 21 and 32. This petition complies with the typeface requirements of Rule 32(a)(5) and the typestyle requirements of Rule 32(a)(6) because it was prepared in 14-point CenturyExpd BT, a proportionally spaced typeface, using Microsoft Word 2019.  This petition complies with the type-volume limitation of Rule 21(d)(1) because it contains 6,879 words, excluding the parts exempted by Rule 32(f).

Respectfully submitted,

*/s/ Sharon L. Nelles*

August 22, 2023